19-2143 from the Southern District of Iowa, the State of Douglas M. West v. Domina Law Group, et al. Mr. Cease, we'll hear from you first. Thank you, Your Honor. May it please the Court, I would like to, I intend to reserve approximately five minutes for rebuttal in this case. As mentioned, my name is- You may. Thank you. You may, but you need to watch your own time because if you keep talking after five, your rebuttal time will elapse. Okay. Thank you. As you mentioned, my name is Matthew Cease, and I represent the Estate of Douglas West in this matter. Today, we ask that this Court reverse the District Court and remand for a new trial due to the admission of previously undisclosed expert witness opinion and factual bases, which formed the basis of those opinions. Rule 26 is very clear in that a complete statement of all opinions by an expert witness must be disclosed. Further, in the 1993 comments to the amendments to the Rules of Civil Procedure, the Advisory Committee recognizes that the purpose of this is to create a court-mandated interrogatory to disclose not only all of the opinions, but all the facts and data that form the basis for that opinion. As the Committee notes and cases have said, that rule is given teeth by Rule 37. Rule 37 says, without even the need for a motion by any party, a party that does not properly disclose testimony or expected testimony from a witness or otherwise, shall not or is not to use any of that testimony at any subsequent hearing or trial in this matter. That's exactly what happened in this case. I want to talk just briefly through and go through the procedural history in this case, because I think it really outlines what the issue is. We have a pretty standard exchange of expert witness testimonies in late 2017 through March of 2017. Discovery in this case did not close for another nine months after defendants disclosed their expert witness testimony. Then a summary judgment motion gets filed by both parties shortly afterwards. Defendants did not put any affidavit from their expert witness and instead just submit an affidavit from one of their witnesses and their expert witness report. In plaintiff's motion for summary judgment, we also had a dauber element to this where we objected to their expert witness testimony in that it was not actually an opinion on several factors and instead was relying on improper speculation in that. The district court ultimately denied that and allowed it to go forward and denied our motion for summary judgment as well and the case was set for trial. We filed a motion in limine attempting to limit that testimony of the expert witness to what was disclosed in that report. For the first time, the defendants mentioned in the resistance to the motion in limine that they intend to supplement this report to include additional evidence. The district court allowed that to happen and a supplementation occurred of just basically one paragraph to that. The district court also allowed us to depose the expert and we did that as well. Then we get to trial and entirely new opinions that were not disclosed in the expert report or in the deposition were attempted to be admitted through the use of hypothetical questions. What is it in the hypothetical questions that you think is significant that wasn't conveyed in the previous disclosures? Two things, your honor. First is that the witness was specifically asked to assume that a meeting occurred that was not listed in any document up to that point. In fact, if you look at the deposition testimony and the expert witness report, the expert witness says, I'm not making an opinion regarding whether they were specifically disclosed regarding the irrevocability of the dissolution proceedings. What was the basis for the hypothetical testimony at trial? It was expected testimony at trial for the most part because Mr. Domina had not testified at the time that Mr. Wanro was doing that. Did Domina end up testifying consistent with the hypothetical? Eventually, yes, I believe he did, your honor. He did testify consistent with the hypothetical. I have no problem with the use of hypotheticals in this instance at all. That's a totally proper way to do this. The problem is that the facts that form the basis for that ultimate opinion answering that hypothetical need to and must be disclosed under Rule 26. Rule 26 in the advisory committee notes talk about all of these facts need to be disclosed. All of the underlying assumptions have to be disclosed. That just did not happen. In fact, if you look at the summary judgment ruling in page 33 of the record of the joint appendix, the court very specifically said in addressing our Daubin issue in footnote 10, the court interprets this as Wanro having no opinion on whether defendants fully informed as evidence that they did. The district court is saying that Mr. Wanro has no opinion as to whether they fully advised him. Now, the hypotheticals outlined a fully advised opinion and say, Mr. Wanro, we would like you to state whether that satisfies the standard of care. He answers affirmatively that yes, this satisfies the standard of care and not only satisfies it, exceeds it. Again, that language that he exceeded the standard of care was not in his report anywhere at all. In fact, if you look at his deposition testimony that we have cited in the record, Mr. Wanro says, in my mind, it doesn't matter if they talked about irrevocability or not. I just simply say, number one, that Mark McCormick does not have the sufficient basis to make his opinion, and number two, all that's required is that they advise him as a dissolution as a possibility in this. He does not, and he's very clear to say, that even if the defendants did not fully advise him of the potential consequences and the irrevocability, I still find that they did not breach the standard of care. And that's really what puts this case on all fours with Tenbarge. Because in Tenbarge, you have the defendant's expert witness saying, here is a list of factors that I think could contribute to carpal tunnel syndrome. Counselor, can I interrupt you? I think the legal standard for Tenbarge is, does the testimony sharply change? Yes. And I think this court says, makes a finding, that the substance of Wanro's testimony was consistent with the expert report. So now, you need to address with me whether it's consistency enough, is the premise question, and then the concluding question is, it doesn't appear to sharply change here. And that's the distinction from Tenbarge. I think that it is inconsistent, first with what I said before, in that the expert witness says first, I have no ability, and if you look at his report, and it's cited again in the summary judgment, I don't have sufficient evidence to make the decision of whether or not they were fully advised. And my opinion is that the standard of care is that he has to simply talk about dissolution. Now, if you agree consistency is the standard, I'm sorry, I gave you a compound question. You can continue to answer, but I think you, like me, are saying consistency is the standard. I'm not certain that it is consistent. I think that there is, I think that you can do a natural extrapolation of the evidence if there is this, and this is where it comes into the harmlessness analysis. Counselor, don't dodge the question. You agreed with me on sharply, right? I'm not certain that it has to be a sharp drastic change. No, no, that's what Tenbarge says, Counselor. It says sharply, S-H-A-R-P-O-Y. I'm pretty sure of it. Yeah, I agree that Tenbarge says that, but it's not what's required under the rule of Rule 26. Rule 26 says that it has to be a complete statement of all opinions and all of the facts and data that are relied upon it. I'm not certain that ... I agree that Tenbarge is controlling, and I think we are sharply different from them. I do agree that, and that's where we get into this, where we talk about what the district court recognized and followed our opinion entirely, our interpretation of Wondro's report, that Wondro had no opinion on whether defendants fully informed West, and now we take that he does now have an opinion. He went from saying there's not enough evidence to make that decision to now there is enough evidence based on the assumptions you've given me, and I say not only did they meet that standard of care, they exceeded that standard of care. That is sharply different than what we have in ... than what his original opinion was. I'd like to reserve the rest of my time for rebuttal unless there's any other questions right now. Judge Waldman, do you have anything for Mr. Cease? No, no. Very well. Then you may reserve. Thank you for your argument. Thank you. Mr. Konicek, we'll hear from you. Thank you, your honors. May it please the court and counsel. If I can address just briefly the point that you just raised with Mr. Cease, Judge Benton, is you asked him directly, is it a sharp contrast? That's exactly what the Tenbarge case required, and that's exactly the first analysis undertaken by the trial judge in this case. Where I need to correct Mr. Cease, because I believe that he inaccurately stated the beginning at page 574 and continuing through page 583 is the supplemental expert report of Mr. Wandro, where he specifically states what the standard of care is as it relates to Christian Williams' affidavit regarding the settlement conference of October 15, 2013, where he states that the statute was read in its entirety and discussed with Mr. West. It was from that, and it's bolded in the supplemental report, that the supplemental opinion was derived. There has been no Rule 16 issue raised here about the timing. Just to clarify that, Mr. Konacic, are you saying that Wandro's report opined that Williams had in fact advised West about the consequences? Yes, Your Honor. If you look at pages, Joint Appendix 577 through 578, where it says supplement, right in there it does, Your Honor. If that's true, then you're saying the hypotheticals just added a stronger basis for concluding that he was so advised, and is that the point? Yes. That is the point. I think that was probably better said by the district judge, a magistrate judge, than I'm going to do now, but what she pointed out is that the hypotheticals, the five hypotheticals, and with all due respect to my co-counsel, Mr. Henderson, his first question on the hypothetical specifically said, was it sufficient in order to meet the standard of care? Then I'm sure the court recognized, and I'm only using the word now, and again, it's not derogatory, but the questions may have become a little lazy, where he said, assume what I just asked you to assume in the prior questions. The point that the district and magistrate judge made in this case was, look, the hypotheticals asked the very same question, except they occurred on a different date, so in reaching her decisions in this case that they did not sharply contrast, she was correct, nor were they prejudicial. I would like, if I could, because of the time limitations, and again, with counsel for the plaintiff here in the reply brief having gone through it, I understand why they brought up the Petron case. It came out after their brief was filed, and obviously then we did not have a chance to in our response, but it was certainly a new case that was brought out by counsel in the reply at pages 13 through 14 of the reply. If the court would indulge me, Petron, and obviously Judge Colton, you were familiar with it, that dealt specifically with a Rule 16 issue, which I wanted to point out was not and never an issue raised here by counsel, the timing of the disclosures. That's number one, but number two in the Petron case is that the opinion of the expert materially deviated and was materially altered after apparently his deposition didn't go too well in his number crunching on the damage calculation that he did for these truck drivers who slept in their berthing in the back of the truck, saying they're entitled to some overtime pay. At his deposition, apparently the counsel for defendant did a good job of cross-examining him, and the plaintiff came out with a new opinion that materially altered and did not clarify, as the court pointed out, his opinion. For that reason, the court found that the Rule 16 had been violated because there was no good cause shown. The other point that counsel raised in the reply brief on this very issue, and one that obviously a good portion of the magistrate judge's opinion related to the fact that the outcome in this case would have been not altered. It wouldn't have been any different on the issue as it relates to what happened. What she pointed out was that Wanderow's testimony in the end, those hypotheticals, I know you weren't there, but in essence, they were probably less than the Gettysburg Address of eight minutes. We argued, and the court recognized based on my arguments and frankly based on watching Mr. Dominant, he is a presence. He is commanding in the courtroom. His effect on the jury was visible. And the magistrate judge saw that. Speaking of that, counsel, as the district court said on page 32, though the court is not endorsing DLG's discovery conduct, any evidence of bad faith is far outweighed by the other three factors. The failure to disclose Wanderow's answers to the hypothetical questions was harmless and did not warrant Rule 37 exclusion. Basically, that's the no harm, no fall rule of basketball, isn't it? It is. It is. And if the situation were to arise again, your firm would conduct itself in the same way. Based on where we are now, Judge, I think I would probably approach it differently. And this is, so I'm not here, you know, where we are now, but can I further respond to that? Please. The case was unusual in this respect. There was no deposition, Judge, ever taken of these defendants. And I'm not critical of Mr. Cease at all or his co-counsel. They had a strategy, and the strategy was to use documents that occurred after the filing of the counterclaim where dissolution was sought. And one could construe those documents as they tried to do out of context that the Domino law firm may have been mistaken. However, and as we pointed out, is that when you put those in the context, number one, they made sense. But number two, Mr. Cease and his strategy, I then took my own strategy and said, look, if they're not going to depose the very people who they claim committed malpractice, I had probably one of the best arguments I could use against Mr. McCormick, their expert. For you see, as I did at the trial, I argued to Mr. McCormick or questioned him, how could you opine that three lawyers, one who has practiced in the area of this dissolution under the Nebraska statute, ever committed malpractice if you haven't heard one shred of testimony or statements by them about their conduct? But I think the question here is whether you had to choose between using that strategy or using an opinion from Wando that relied on the forthcoming testimony that wasn't taken in the deposition. The question is whether you could do both, whether you could use the tactic you just described on the opposing expert, but then have an expert opinion that's based on undisclosed forthcoming testimony. What do you say to that? Yes, I believe based on the Rule 26 and Rule 37 standards that are cited by the magistrate judge, I could. The key piece is, and we'll go back to the very first question you had, Judge Culleton, to me, was there is a hypothetical that was used about the October 15, 2013 mediation where that statute was read verbatim and discussed, where Mr. West turned down a $6 million offer to retire under the shareholder agreement. That was in essence the basis for every other question on the hypothetical, that the consequences were disclosed. Every other hypothetical that was asked was based on disclosed documents. I tied each hypothetical to a disclosed document that was disclosed in the report. Mr. Domina wrote very detailed, 15-page, paragraph by paragraph statements to his client, Mr. West, that needed to be explained. I knew they were going to be explained, and we had disclosed him as wanting to explain those documents. I think, and as the court found, we complied with Rule 26. I agree there was elaboration. I'm not disputing that based on the hypotheticals, based on trial testimony that occurred, which is allowed under Rule 703. Can I just point to one other thing that I think was compelling in what I was going to finish my argument, is that in the end, I made clear to the jury in my closing argument that you could throw out McCormick, you could throw out Wondro, but there's no way anybody sitting in that courtroom that watched David Domina testify would, number one, toss out his testimony, but number two, I suspect every person in that courtroom would probably hire him based on his knowledge, composure, his articulation, and he steadfastly maintained what he discussed and said that they did not deviate from the standard of care. The jury had a number of options for reaching the decision that it did, which is unlike the Petrone case, by the way, where, Judge, it was easily discernible that there was one report on damages, and the jury picked that report. The concern with that argument is how do we know which basis the jury went on? If there's a flaw in the ... I'm not saying there is or isn't a flaw in the expert situation, but if that was one of the options that could have been the basis for their decision, don't we have to evaluate whether it was flawed? That's my point, because you can't, and we can't. That's one of the very reasons why you can't overturn, because there was a sufficient record here for the jury to reach its decision without, if we had excluded ... There was a sufficient record, but how do we know the experts weren't a but-for cause of the conclusion? Well, so the burden of proof, and I understand your question, I truly am not trying to toss it aside, but I don't ... All we have to show is that there was a basis for the jury to reach its decision. They have to show the plaintiff, so really, the question should be asked to Mr. Cease also. We'll ask him, but I'm just not sure whether that's right. If he establishes that there was error, then do you have to do more than show there could have been some other basis for the decision? I believe that's my ... What I need to show is that there was a basis for the decision. I can do that two ways, Judge. One, through what I've just discussed, but two, the proximate cause here, and the magistrate judge pointed it out. There was, under the circumstances that were presented to this jury, no way, and the jury was instructed on jury instruction number 14, I agree it was the reasonable person in Mr. West's circumstances. Mr. Cease didn't put that in his reply brief, but if you look at the jury and the way it was instructed, and the magistrate judge's opinion in this case, she specifically recognized it's an objective standard of somebody in his shoes. Number one, he had turned down six million. He did not want to retire because of the non-compete, and number two, Mr. Finken, a powerful witness, testified he would never have gone into business with this guy who raided his company, Mark West. The buy-sell agreement specifically required Mr. Finken's consent to any sale to a third party. For all those reasons, we respectfully request that this well-fought trial and the verdict remain. Very well. Thank you for your argument. Unless there are any further questions from my colleagues, we'll hear from Mr. Cease in rebuttal. You may proceed. I think you're on mute. Thank you, Your Honor. I missed that. I want to start just with what Mr. Conasec ended with. His argument, what he's talking about is proximate cause. First, it's abundantly clear that that's a reasonable person standard because you cannot make the decision based on what Doug West would have done because if you have to operate under the presumption that he wasn't properly informed, so you then have to take the question as what would a reasonable person have done had they been adequately informed? The second issue regarding some of this burden of proof and would the result have been different, the jury never even got to the proximate cause issue. If you look at the verdict form in this case, the jury simply said no as whether there was negligence that occurred in this case. They never got to the proximate cause question at all, which we believe establishes that they're relying on these standard of care opinions that occurred in this case. Not only was it enough for the jury to say no, there was a question submitted in this case requesting if they could award attorney's fees as well. I think that the reason that that happened in this case was because there was unrebutted testimony from an expert witness in this. If you look at Mark McCormick's report and then his subsequent affidavit and his testimony, our expert had something to say about that October 2013 meeting. We believe that he would have something to say about these other five or six undisclosed opinions. We were denied that opportunity to present that evidence at all. I also take issue with the idea that the supplement was an extension or these hypothetical questions were an extension of the supplement. If you read that carefully, that additional paragraph, it's in two places in that report on page 577 and 578 and page 581. What is actually said in that supplement is that the reading of the statute would give Christian Williams sufficient evidence to gain an understanding of the Nebraska statute if such understanding was not already possessed and would have been sufficient to advise and communicate with Mr. West the potential consequences of filing for judicial dissolution. It does not say that they did give that information. It just says that Mr. Williams had the ability to convey that information. How about the sentence in part 3B where he says, due to the nature of a busy legal practice and a client who prefers to communicate via telephone, it is possible that DLJ did express to Mr. West over the phone the consequences of filing for judicial dissolution. There's no method to determine otherwise. Is he assuming there that West was advised of the consequences? He's just saying that it's possible. If you look, and it's just quoted briefly in the district court's summary judgment ruling on page 32, and it's quoted in 8th Circuit case Barrett v. Rodolia, that says expert testimony is inadmissible where it is excessively speculative or unsupported by sufficient facts. When he says, oh, it's possible that it could have happened over a telephone call, that's insufficient expert basis to form an opinion on it. That's why you see him in his report saying, or in his deposition, that I don't have any evidence other than what's in the documents. I just want to briefly touch on this idea that it was somehow our fault because we didn't take the depositions of these individuals. We took every step available to try to first learn all of the information that would be on Rule 26 and Rule 37, that a party will abide by those. We filed a motion in limine that was largely unresisted in this context, except for their request to do the supplementation, to try to limit and prohibit this additional testimony that was potentially going to occur. That failure of disclosure really would not only change the litigation tactics and the ideas of how we presented the case, but also can lead to the difference in the ultimate verdict in this. For those reasons, we'd ask that you would reverse the district court, unless there are any other questions. So, your proposed relief is a new trial? Absolutely. I think that following 10 Barge and the logic with 10 Barge, that's the only equitable result in this case. Rule 37... All right. Thank you for your argument, Mr. Cease. The case is submitted. Thank you to both counsel. The court will file an opinion in due course. Counsel are excused. You may disconnect or remain on to listen if you wish. Madam Clerk, would you please...